Paul CHICAGER, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.

No. 77-1508.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 4, 1978.

Decided March 20, 1978.

James A. Kudasik, Somerset, Pa., for appellant.

Blair A. Griffith, U.S. Atty., Craig R. McKay, Asst. U.S. Atty., Pittsburgh, Pa., Stephanie W. Naidoff, Regional Atty., Joseph M. Masiuk, Asst. Regional Atty., Office of Gen. Counsel Region III, Dept. of Health, Education, and Welfare, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from a final order of the district court granting summary judgment

in favor of the Secretary of Health, Education, and Welfare and against Paul Chicager, a claimant of disability benefits under the Social Security Act. Reviewing pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), of the district court held that the Secretary's decision denying benefits to Chicager was supported by substantial evidence. We reverse and remand for the entry of an order directing the Secretary to pay the benefits.

In 1941, when he was nineteen years old, Chicager developed lupus erythematosus, a mysterious and incurable disease marked by degenerative changes in connective tissues and by skin lesions. Because of absences caused by this illness, he was unable to continue working at his job as a grinder. He last met the special earnings requirements for disability insurance coverage specified in § 223(c) of the Act, 42 U.S.C. § 423(c), on March 31, 1944. In 1972 he applied for disability benefits. To be eligible, he had to establish that he became totally disabled while still insured and that his disability continued to within fourteen months of his application.

In 1974 an administrative law judge denied his application. The judge found that he suffered from discord lupus erythematosus and carcinoma of the lower lip and that two fingers of his right hand had been amputated. He also found, however, that proof was lacking that any of these impairments arose prior to March 31, 1944, or that any was of sufficient severity to have prevented him from performing substantial gainful activity for any continuous period since then. The appeals council affirmed, and Chicager sought judicial review. Noting that Chicager had proceeded *pro se* and that he may not have been afforded the opportunity to develop all favorable medical evidence, the district court remanded the case to the Secretary for further proceedings.

A supplemental hearing was held before a second administrative law judge. That judge commented on the evidence as follows:

The record shows that lupus erythematosus was present in 1941 and the claimant terminated his grinder job in early 1943 because of being hospitalized for his skin disease.

There is substantial evidence in the record to establish these facts. Thus, one of the original deficiencies in the record—an absence of proof that lupus developed prior to March 31, 1944—was cured. However, the second administrative law judge also found:

The combination of the claimant's impairments including the pain and limitations imposed thereby were not of sufficient severity to prevent him from engaging in the factory grinder job for a continuous period of 12 months beginning on or prior to March 31, 1944 and continuing up to 14 months prior to filing the application.

If this finding means that Chicager was not disabled from gainful employment prior to March 31, 1944, or that such disability did not continue for at least twelve months, it is not supported by substantial evidence in the record as a whole. The evidence to the contrary is overwhelming. We assume, however, that what the administrative law judge meant was that the pre-March 31, 1944 disability did not continue to within fourteen months of Chicager's application.

As to this, the record establishes that between March 31, 1944, and the early 1960s Chicager was totally supported by his family. Thereafter, he received welfare payments. In the 1960s, however, steroid compounds became available which afforded palliative relief from the inflammation caused by lupus. Less troubled by pain, Chicager undertook on his own initiative a twenty-month course in bookkeeping, offered under the auspices of the Bureau of Vocational Rehabilitation. His repeated efforts to find employment as a bookkeeper were unavailing, however, because of his physical impairments.

In 1966 Chicager finally obtained a job, not as a bookkeeper, but as a truck dispatcher. Despite frequent absences and with the assistance of co-workers, which extended even to such simple tasks as the

use of the telephone, he managed to keep this job from September, 1966, to August, 1968. His earnings were never sufficient, however, for him to become currently insured under the disability provisions of the Social Security Act. Nonetheless, it is on this sporadic employment that the second administrative law judge relied to establish that Chicager's pre-March 31, 1944 disability did not continue to within fourteen months of his application.

Disability is defined by the Act as inability to engage in any "substantial gainful activity" by reason of a medically determinable physical impairment lasting for a continuous period of twelve months. 42 U.S.C. § 423(d)(1). The impairment must be of such severity that the applicant cannot, considering his age, education, and work experience, engage in any kind of "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). Since the statute does not define "substantial gainful activity," the Secretary has attempted a definition:

*Substantial gainful activity defined.* Substantial gainful activity refers to work activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment.

20 C.F.R. § 404.1532(b). The regulations further provide that mere employment is not determinative. Adequacy of performance must also be taken into account:

*Adequacy of performance.* The adequacy of an individual's performance of assigned work is also evidence as to whether or not he has ability to engage in substantial gainful activity. The satisfactory performance of assignments may demonstrate ability to engage in substantial gainful activity, while an individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work, may constitute evidence of an inability to engage in substantial gainful activity. "Made work," that is, work involving the performance of minimal or trifling duties which make little or no demand on the individual and are of little or no utility to his employer, or to the operation of a business, if self-employed, does not demonstrate ability to engage in substantial gainful activity.

20 C.F.R. § 404.1532(d). The regulations provide in some detail for evaluating the significance of time spent at work, 20 C.F.R. § 404.1533, and earnings derived from work. While the amount of earnings is relevant in determining disability, the mere existence of some earnings is not dispositive:

Where an individual who claims to be disabled engages in work activities, the amount of his earnings from such activities may establish that the individual has the ability to engage in substantial gainful activity. Generally, activities which result in substantial earnings would establish ability to engage in substantial gainful activity; however, the fact that an individual's activities result in earnings which are not substantial does not establish the individual's inability to engage in substantial gainful activity. Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity. . . .

20 C.F.R. § 404.1534(a). The regulations simply provide that earnings in excess of $140 a month shall be deemed to demon-

strate ability to engage in substantial gainful activity, unless there is affirmative evidence that the work activities establish the contrary. 20 C.F.R. § 404.1534(b).

■ Purporting to apply these regulations, the administrative law judge found that Chicager's earnings of $520 in 1966, $3525 in 1967, and $2475 in 1968 established his ability to engage in substantial gainful activity. We must affirm that finding if in our view it is supported by "substantial evidence," which we have elsewhere defined as "evidence which a reasoning mind would accept as sufficient to support a conclusion." *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971). We do not think that a reasoning mind, taking into account the evidence of Chicager's frequent absences, the difficulties he encountered in performing the simple tasks assigned to him as truck dispatcher, the unusual assistance he required from co-workers, and his cancer-caused need to avoid exposure to sunlight, could properly conclude that the presumption arising under 20 C.F.R. § 404.1534(b) had not been overcome.

The record clearly establishes that Chicager suffered from lupus erythematosus since prior to March 31, 1944, and that in twenty-five of the twenty-eight years preceding his application in 1972 his disease prevented him from earning anything. The earnings he achieved during the three years in which steroid therapy afforded him some relief were not even sufficient to qualify him for disability coverage under the Act. That employment, only possible because of Chicager's extraordinary determination and with assistance from fellow workers, was not a successful work experience. Chicager was eventually terminated—in part, at least, because of his condition.

It is undisputed that Chicager's illness cost him his job as a grinder in 1943. It is also undisputed that radiation treatment in 1946 failed to enable him to return to grinding. Once a claimant has proved that he is unable to perform his usual task, the burden shifts to the Secretary to prove that there is some other kind of "substantial gainful employment" he is able to perform. *Stark v. Weinberger,* 497 F.2d 1092, 1098 (7th Cir. 1974) (Stevens, J.); *Hernandez v.*

*Weinberger,* 493 F.2d 1120, 1122 (1st Cir. 1974); *De Paepe v. Richardson,* 464 F.2d 92, 100–101 (5th Cir. 1972).

The Secretary did not bear his burden by showing that Chicager went to school to learn bookkeeping, for despite a diligent search he was unable to put his newly acquired skills to work. Thus, the Secretary's entire case is seen to rest upon nothing but the presumption arising from earnings in excess of $140 a month. We have already said that this presumption was overcome. Nothing can rest on Chicager's performance as a truck dispatcher because he was unable "to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work." 20 C.F.R. § 404.1532(d). A reasoning mind would not accept the evidence before us as sufficient to support the Secretary's conclusion. Since that is the case, there is no need for us to decide whether as a matter of law "substantial gainful employment" must produce earnings sufficient to qualify the worker for coverage under the disability insurance provisions of the Act.

The judgment appealed from will be reversed and the case remanded to the district court for the entry of an order reversing the decision of the Secretary and directing the payment of disability benefits to Chicager.