Fredrick J. **LEONARD**, Plaintiff,

v.

Margaret **HECKLER**, Secretary of Health & Human Services, Defendant.

Civ. No. 83–0111.

United States District Court, M.D. Pennsylvania.

Nov. 15, 1983.

Lee C. Krause, Honesdale, Pa., Joseph R. Rydzewski, Nogi, O'Malley, Harris & Schneider, Scranton, Pa., for plaintiff.

Sally A. Lied, Asst. U.S. Atty., Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The plaintiff commenced the instant action seeking to challenge the defendant's decision to deny his claim for disability benefits under Title II of the Social Security Act. After both parties filed motions for summary judgment, the matter was referred to Magistrate J. Andrew Smyser for a Report and Recommendations. The Magistrate filed his report on August 16, 1983, and recommended that the court grant the defendant's motion for summary judgment.

For the reasons set forth below, the court will decline to adopt the Magistrate's Report and will remand the matter to the Secretary so that the Administrative Law Judge (ALJ) handling this case may make further factual findings.

The ALJ made the following findings, *inter alia*, with respect to the plaintiff's claim for benefits:

11. The claimant's impairments are such that they prevent him from returning to his past relevant work as an equipment operator, medium to heavy, skilled and semi-skilled activity.

12. Although the claimant cannot return to his past relevant work, the claimant does retain the residual functional capacity to engage in less strenuous work activity of a light, semi-skilled to skilled nature. (Testimony of vocational expert).

13. There are [sic] a significant number of jobs in the national economy to which the claimant has transferable skills in the light, skilled category, although the claimant's impairments are such that he should work in a controlled environment. (Testimony of vocational expert).

*See* Record of Administrative Proceedings at 17–18, attached to Document No. 7 of the Record. Hence, notwithstanding that the plaintiff suffers from an impairment (emphysema), the ALJ found that he is not "disabled" because he retains the ability to engage in "substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The court recognizes its obligation to accept the findings of fact by the ALJ if those findings are supported by "substantial evidence," *i.e.*, "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287 at 290 (3d Cir.1983); *accord, Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). In arriving at his conclusion that the plaintiff has skills which are transferable to a "significant number of jobs in the national economy," the ALJ relied upon the testimony of a vocational expert, one John Marchi. Mr. Marchi opined that the plaintiff possesses skills which can be adapted to jobs involving the operation of light machinery, including hydraulic and electric equipment, delivery vans and pick-up trucks. Marchi stated that these jobs exist "in the thousands in almost all industries," including those industries operating in the region where the plaintiff lives. Finally, Marchi observed that there are "hundreds of thousands" of jobs of this type in the national economy.

The ALJ then asked Marchi to discuss the types of jobs available to the plaintiff if it were assumed that he "had all the re-

strictions, limitations and pain which he has alleged in his testimony." In answering the hypothetical question, Marchi explicitly accorded full credence to a doctor's report which stated that the plaintiff should be totally restricted from engaging in activities involving exposure to dust, fumes and gases. *See* Record of Administrative Proceedings at 152, attached to Document No. 7 of the Record. Marchi noted that the jobs he had described as potentially available for the plaintiff are "seldom, if ever, found in areas where there is—controlled environmentally, that is dust free, fume free or gas free. So based on that, as far as transferability of skills, I would say, no, you would not—there are no jobs that he could readily transfer his skills to that he can use with the training that he's had." *Id.* Marchi testified that even a job involving light delivery work would fall within "the negative environmental area" unless the plaintiff could stay in the vehicle and if it was air-conditioned or otherwise environmentally controlled. After further questioning by the ALJ, Marchi observed that the cabs in trucks and other equipment "can be equipped so that they are environmentally controlled, not necessarily just air conditioning but the air can be filtered even in winter or summer." *Id.* at 82. If the plaintiff was able to avail himself of such equipment, and did not have "to leave that cab more than just occasionally, then he could perform it." *Id.* The ALJ asked whether this type of equipment was available to such a degree as to permit him to say that "there would be jobs in the thousands" within the region. Marchi answered no. With the respect to the national economy, Marchi initially stated that he did not think there would be "thousands" of jobs. After the ALJ observed that the national economy is "pretty broad," however, Marchi responded that he thought there would be 4,000 or 5,000 jobs in the nation which would involve a dust-free and fume-free environment and would encompass the plaintiff's skills.

After carefully reviewing the record of the administrative proceedings, the court concludes that there would be substantial evidence to support a finding by the ALJ that the plaintiff requires a dust-free and fume-free work environment. It is unclear whether the ALJ's decision encompasses such a finding. *See infra.* If, however, the plaintiff requires such an environment, then the Secretary erroneously denied disability benefits. According to the ALJ, the plaintiff is not entitled to benefits because he can perform skills which are transferable to a "significant number" of jobs which exist in the national economy. Assuming the need for a totally pollution-free work environment, however, the evidence demonstrates that the plaintiff would be forced to seek out an employer who possesses special equipment which exists only in limited numbers. According to the vocational expert, there are only 4,000 or 5,000 jobs in the entire nation for which the plaintiff is qualified and for which this equipment is available. This being the case, the court holds that the existing record does not support the conclusion that the plaintiff is able to engage in work which exists to any significant degree in the national economy.

█ In reaching this conclusion, the court is persuaded by the fact that the number of jobs cited by Mr. Marchi is a minuscule fraction of the number of jobs existing in the national economy. *See Ray v. Secretary of Health, Education & Welfare,* 465 F.Supp. 832, 837 (E.D.Mich.1978) (holding that 200 jobs is not a significant number of jobs in the Detroit area where the number represents only one ten-thousandth of the jobs in the area). Although Congress intended to shift the emphasis toward medical factors and away from employment opportunity problems when it amended the Act in 1967, benefits cannot be denied on the ground that a few appropriate jobs exist in some remote sector of the national economy. *See id.* The court also observes that in the present case, Mr. Marchi's testimony was equivocal, for he only arrived at the 5,000 job figure after the ALJ had reminded him that the national economy is "pretty broad." Indeed, initially Marchi was reluctant to characterize

the number as "in the thousands." *See* Record of Administrative Proceedings at 83, attached to Document No. 7 of the Record. Moreover, the vocational expert did not elaborate on the basis for his opinion that 4,000 to 5,000 jobs of this kind do, in fact, exist in the national economy. Since the ALJ's finding that there is a significant number of jobs available to the plaintiff rests solely on this equivocal testimony, the case will be remanded to the Secretary for further proceedings.

■ Although the court has stated that benefits cannot be denied on the ground that 4,000 to 5,000 jobs exist which are "dust-free," it is unclear whether the ALJ found, as a fact, that the plaintiff must have such an environment. The ALJ made fifteen findings of fact, one of which stated that the plaintiff *"should* work in a controlled environment." *See id.* at 18 (emphasis added). It is unclear, however, whether the ALJ meant that the plaintiff *should* avoid dust and fumes in order to gain maximum comfort, or that he *must* work in an area totally free of dust and other irritants for the sake of his health. Indeed, to support his finding that plaintiff "should" work in a controlled environment, the ALJ cited the testimony of the vocational expert. The expert, however, was asked to *assume* that the plaintiff needed to work in a controlled environment. Although the section of the ALJ's decision labeled "Evaluation of the Evidence" tends to indicate that the ALJ viewed a controlled environment as necessary, *see id.* at 16, it is significant that he did not make a specific finding regarding the degree to which the plaintiff's environment must be free of pollutants. In addition, the ALJ found that the plaintiff's "allegation of severe and constant discomfort, restrictions and limitations were not fully credible to support his claim of disability". *Id.* at 18. If the plaintiff does not require a totally dust-free environment, then it may very well be that there are thousands of jobs in the regional economy open to him. On remand, the ALJ will have to resolve the question regarding the degree to which the plaintiff must have a pollution-free environment.

An appropriate Order will enter.