**Barry KOSS, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Department of Health and Human Services, Defendant.**

**No. 81 Civ. 8034(CES).**

United States District Court, S.D. New York.

Feb. 22, 1984.

James F. Simermeyer, New York City, for plaintiff; Harry Wallace, New York City, of counsel.

John S. Martin, U.S. Atty., New York City, for defendant; Stanley D. Davis, Asst. U.S. Atty., New York City, of counsel.

STEWART, District Judge:

Plaintiff Barry Koss brings this action to review a final determination of the Secretary of Health and Human Services ("Secretary") in which his application for a period of disability and disability insurance benefits was denied. Plaintiff has moved for summary judgment and the Secretary has cross-moved for judgment on the pleadings. We conclude that the case must be remanded for further proceedings.

In July, 1972 plaintiff, now about thirty-one years old, was given an honorable discharge from the Navy after having served only an eight-month tour of duty. (Tr. 9.) Prior to his discharge, plaintiff had been diagnosed as having a "passive-aggressive personality, severe," and, with his discharge imminent, was voluntarily hospitalized for about two weeks in June, 1972 having made suicide threats to his parents. (Tr. 109.) The day after his discharge, plaintiff was diagnosed as having "schizophrenia, undifferentiated type" and rated by the Veterans Administration (VA) as having a 50 percent service-connected disability. (Tr. 97, 121.) The record is unclear as to whether the VA deemed plaintiff to be 50 percent disabled, or as having a disability that was only 50 percent service-connected. The VA intake form dated September 5, 1972 indicates that plaintiff was then complaining of

depression, insomnia and poor appetite. He feels like he is in a daze and hears voices calling his name. While in service he was hospitalized two times. Each hospitalization lasted for about three weeks. He had attempted suicide by taking 100 aspirins, but states he doesn't know why he was feeling so despondent. (Tr. 96.)

A VA initial treatment form, signed by a Dr. Scott some weeks later, states that plaintiff felt the voices he heard "were trying to control him," and that the plain-

tiff had "difficulty with concentration and memory." (Tr. 99.) Plaintiff was voluntarily hospitalized on October 24, 1972 to "establish him on medication" and again in January, 1973 after having "expressed suicidal intent with a knife." (Tr. 110.) For the most part, it appears that plaintiff has been under the continuous supervision of the VA since his discharge from the Navy and until at least the time of his hearing before the Administrative Law Judge (ALJ) on August 31, 1981. In 1980, plaintiff's service-connected disability rating was upgraded to 100 percent, retroactive to October 1978. (Tr. 121.) Plaintiff began a three-month period of hospitalization as of the latter date, the precise cause of which the record does not make clear, although it can be inferred that it was related to his mental difficulties. (*Id.*)

At the time his disability rating was upgraded, plaintiff was diagnosed as having "schizophrenia, chronic indifferentiated type", and his incapacity was rated "severe". (Tr. 119.) The record indicates that plaintiff has been under chemotherapy since 1972. For some time he has been taking Thorazine, Desperine and Sinquan on a daily basis (Tr. 31, 43, 68). In 1980, when plaintiff's veterans disability rating was upgraded, he was described by a treating physician as being in a state of "constant intense tension ... unable to relate to people meaningfully, to take any orders, to comply to any routine." The same report indicates plaintiff had severe concentration and sleeping problems. The report concludes "that only a high amount of medication prescribed apparently keeps him in such state of control that he is minimally able to control agitation state." (Tr. 118.)

On February 19, 1981 plaintiff applied for disability benefits, and, after his application was denied, he was granted a hearing before an ALJ on August 31, 1981. The medical evidence summarized heretofore was uncontradicted at the hearing. However, the ALJ did not base his decision that plaintiff was able to engage in "substantial gainful activity" and therefore was not disabled, *see* 42 U.S.C. § 423(d)(1)(A), on the medical evidence. Rather, the ALJ rested his determination on 20 C.F.R. § 404.1574(b)(2) which provides in relevant part:

> *Earnings that will ordinarily show that you have engaged in substantial gainful activity.* We will consider that your earnings from your work activities as an employee show that you have engaged in substantial gainful activity if—
>
> (i) Your earnings averaged more than $200 a month in calendar years prior to 1976 ...

The ALJ found that this regulation was satisfied, and thus that plaintiff was ineligible for benefits because 1) plaintiff was insured and eligible to qualify for disability benefits only through the end of 1974, and 2) during 1974 plaintiff earned, the ALJ found, $10,000 or "well in excess of the $200 per month guideline." (Tr. 9.) While plaintiff contests whether his insured status expired as of the end of 1974—a claim which we discuss briefly below—the threshold issues on appeal relate to the amount of plaintiff's earnings and the legal significance of those earnings for purposes of entitlement to benefits.

By way of affidavit on this appeal plaintiff has stated that he misunderstood the question at the hearing which elicited his testimony that he earned $10,000 in 1974 (and slightly higher amounts in succeeding years through 1978). Plaintiff contends that his testimony was intended to state his salary *rate* (i.e., $10,000 per annum) in 1974, not the amount he actually earned, and that in fact plaintiff was always a part-time employee and, due to his condition, unable to report to work on even a regular part-time basis. Plaintiff claims that he "has no recollection" of his actual earnings. The affidavit carefully does *not* assert that plaintiff earned less than $200 per month in 1974.

While we think that a remand is appropriate so that the ALJ may resolve the ambiguity surrounding plaintiff's in-

come in the relevant time period,[1] we are also persuaded to reach a further issue. In light of what the affidavit carefully does not allege, i.e., that plaintiff *never* earned more than $200 per month, we also consider what should follow if the ALJ again determines that plaintiff earned more than that threshold amount. The issue we address is whether a well supported finding by the ALJ that the income ceiling of 20 C.F.R. § 404.1574(b)(2) has been exceeded *automatically* constitutes "substantial evidence" that plaintiff was not disabled, thereby requiring the district court to affirm the Secretary's decision. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...").

Although the language of § 404.-1574(b)(2) that "We will consider that your earnings ... show that you have engaged in substantial gainful activity if [the income ceilings are exceeded]" sounds mandatory, other language in § 404.1574(b) suggests the opposite. Section (b) is captioned "Earnings *guidelines*" (emphasis added), and section (b)(1) refers to the ceiling levels of (b)(2) as "guides". If a mandatory meaning were intended, better words could have been chosen. In addition, § 404.-1574(b)(2) itself is captioned, "Earnings that will *ordinarily* show that you have engaged in substantial gainful activity." (Emphasis added.) The word "ordinarily" implies that there can be exceptions and therefore the income levels of § 404.-1574(b)(2) are intended to create only a rebuttable presumption of ability to engage in substantial gainful activity. Other sections of the regulatory framework found

under the heading "Substantial Gainful Activity" similarly support the conclusion that § 404.1574(b)(2)'s "guidelines" are not mandatory. *See* 20 C.F.R. §§ 404.1571 ("We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity"), 404.1573(b) ("We will consider how well you do your work when we determine whether or not you are doing substantial gainful activity," etc.), 404.1574(a)(1) ("Earnings from work you were forced to stop after a short time because of your impairment will not show that you are able to do substantial gainful activity.") Other courts have agreed with this reading. *Davis v. Schweiker*, 641 F.2d 283, 286 (5th Cir.1981) (regulation sets forth earnings which are presumed to be evidence of substantial gainful activity but claimant can rebut the presumption); *Chicager v. Califano*, 574 F.2d 161, 164 (3rd Cir.1978) (same); *Shutt v. Secretary of HEW*, 490 F.2d 43, 47 (5th Cir.1974) (same).[2]

In sum, we hold that if a claimant puts into the record evidence demonstrating that, although he may have exceeded the income guides of § 404.1574(b)(2), he was not engaging in substantial gainful activity, the ALJ must consider and weigh that evidence. In this regard the ALJ should consider whether the claimant was able, with some degree of consistency, to perform work assignments "satisfactorily without more supervision or assistance than is usually given other people doing similar work," and whether his work was useful to his employer. 20 C.F.R. § 404.-1573(b). Evidence of "frequent absences,

---

1. The Secretary argues that we should not consider plaintiff's affidavit since new evidence may only be considered on appeal if "material" and there was "good cause" for the failure to bring it to the ALJ's attention. 42 U.S.C.A. § 405(g) (West 1983). Since the ALJ based his decision on plaintiff's earnings, and in light of our discussion *infra*, we have little difficulty in finding that the information is material. As for cause, the record indicates that plaintiff has trouble concentrating, his judgment, memory and insight are impaired, and his medication impairs his ability to speak and comprehend. (Tr. 31, 52, 118.) This, plus the fact that his

representative at the hearing, apparently not a lawyer, indicated a lack of awareness of plaintiff's employment history, is sufficient to amount to good cause for failing to clarify the issue at the hearing.

2. These cases were decided before a revision of the relevant regulations, effective April 1, 1981. However, our review of the regulations before and after the revision indicates they have primarily been reorganized and not changed in substance.

[and] the difficulties [a claimant] encountered in performing ... simple tasks" would be relevant. *Chicager v. Califano,* 574 F.2d 161, 164 (3rd Cir.1978). The need for careful weighing is particularly important in cases where a disability, be it mental or physical, has ephemeral symptoms, and the claimant's desire to overcome his disability in combination with the employer's indulgence may have led to excess earnings without there ever having been successful work performance. "Gainful activity" implies that the income was truly earned.[3]

In the present case the plaintiff's work history is rather undeveloped. Although the ALJ indicated he would look into plaintiff's employment with the post office (Tr. 27, 34), this apparently was never done. We do think, however, that on the record before us plaintiff has already indicated enough to raise a substantial question as to whether the presumption of § 404.-1574(b)(2) should govern. It is clear that plaintiff suffered from a severe mental disorder long before his eligibility could have run out, that he is, by uncontradicted evidence, disabled today, and that his intervening work history was at best spotty. On remand it will be the ALJ's task to fully weigh all the evidence and resolve the open question of whether the presumption should apply. Finally, as to plaintiff's claim that his employment at the post office extended his period of eligibility, since the ALJ assured the plaintiff he would examine plaintiff's employment history at the post office and apparently did not, we think plaintiff should be given an opportunity to show that his eligibility extended beyond the end of 1974, the date the ALJ found eligibility ended, or beyond the first quarter of 1975, the date the Secretary now asserts eligibility ended. Def.Supp.Mem. at 3. The ALJ should also consider whether plaintiff's schizophrenia qualifies as a listed impairment under 20 C.F.R. § 404.-1525(a) and (c). *See* 20 C.F.R., Appendix I, §§ 12.00(A), 12.03.

The action is remanded for further findings consistent with this opinion.

SO ORDERED.

---

**3.** We do not subscribe to the view of some courts that a person may receive benefits if he had a condition during a period of eligibility which *later* became sufficiently severe to be called a disability within the meaning of the Act. *Compare Rodriguez v. Califano,* 431 F.Supp. 421 (S.D.N.Y.1977) (condition which reached disabling severity after eligibility does not entitle claimant to benefits) *with Cassel v. Harris,* 493 F.Supp. 1055 (D.Colo.1980) (disability will entitle claimant to benefits if traceable to condition which existed during eligibility). However, we have no difficulty accepting the proposition that the existence of a disability may not become known during the period of disability and that later unsuccessful work efforts may confirm its existence. Thus, the ALJ should carefully weigh the evidence to determine whether plaintiff's subsequent work history confirms or refutes the existence of disability during eligibility. In this respect, the advice of 20 C.F.R. § 404.1574(a) that "earnings from work that you were forced to stop after a *short* time" (emphasis added) will not prove the ability to engage in substantial gainful activity, should not be blindly relied on to deny benefits if the quality of plaintiff's work, for however long he worked, belies the conclusion that plaintiff was able to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1574(b).