**Evelyn DAVIS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 84–1616.**

United States District Court, W.D. Pennsylvania.

Jan. 29, 1985.

---

Robert N. Peirce, Jr., Pittsburgh, Pa., for plaintiff.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiff here appeals from an adverse decision on her application for disability insurance benefits. 42 U.S.C. § 405(g). She first applied for disability benefits in August 1983. The Secretary denied this application and ·a subsequent request for reconsideration. Ms. Davis was heard before an Administrative Law Judge ("ALJ") in February 1984, who also denied her claim in an opinion dated March 28, 1984. The Secretary's decision became final when the Appeals Council affirmed the ALJ's denial in May 1984.

Plaintiff is now 56 years old. She apparently did not finish high school but has received a General Equivalency Diploma. She last worked in August 1982 when she operated a drill press, a position she held for ten years. Ms. Davis now complains that numbness in her extremities, dizzy spells, high blood pressure, tension headaches, diabetes mellitus and its accompanying complications and constant pain in her joints render her unable to perform any substantial gainful activity. The ALJ nonetheless found that her impairments did not prevent her from returning to her prior job as a drill press operator. Both parties have moved for summary judgment in this appeal.

The Social Security Act limits judicial review of the Secretary's final decision; our task is to determine whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Secretary should consider four elements of proof in determining disability: medical information, expert medical opinions, subjective complaints, and the claimant's age, education and work history. *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972). We may not reweigh the evidence. But we may examine the ALJ's evaluation of the evidence to ensure that it conforms with the principles of reason and logic commonly applied to these non-adversarial proceedings.

The medical evidence of record focuses on plaintiff's arthritis and diabetes. Ms. Davis was hospitalized in February 1981 with lumbosacral sprain. (Record at 86). Around May of 1981, at office visits to her treating physician, Dr. G.R. McCollum, she complained of sharp pains in her right knee. Dr. McCollum removed fluid from the knee and prescribed medication. He reported in August 1983 that Ms. Davis' right knee could flex only through one-half the normal range of motion. She was able to move her left knee through three-

quarters of the normal range of motion. (Record at 122–23).

Plaintiff continued to feel pain in her back. She also had difficulty walking distances of more than a block and in climbing stairs. Dr. McCollum's assessment in September 1983 included a finding of "probable degenerative joint disease of the low back. Also possible disc disease." (Record at 125). At her hearing Ms. Davis complained of chronic pain in all her joints. She stated that she can walk no more than half a block before the pain intensifies. (Record at 34). She experiences difficulty standing upright unless she leans against something for support. She admits to occasionally washing dishes, but this task lasts only five or six minutes, when she can lean against the sink for support. (Record at 36–37).

Ms. Davis' diabetes poses a more serious problem, and possibly complicates her joint pain. When she was hospitalized in February 1981 for lumbosacral sprain, her stay was lengthened by Dr. McCollum's inability to reduce her blood sugar to an acceptable level. "[S]he had a long history of diabetes mellitus which had been very brittle." (Record at 86). The various medical reports in evidence indicate that Ms. Davis' diabetes is largely uncontrolled despite her use of insulin. Dr. K. Ung reported in September 1983 that her prognosis "is poor since her diabetes is probably not well controlled, and even with good control her symptoms may still become worse in time." (Record at 125). Dr. McCollum concurred in this diagnosis. In December 1983, he reported that "in view of [Ms. Davis'] symptoms and the length of time they have persisted, there is no chance of improvement and little hope that she will be able to return to employment of even a sedentary nature. The effects of the diabetes will be progressive and I don't anticipate a reversal of the effects because of the labile nature of the disease in this woman." (Record at 146).

In his opinion, the ALJ disregarded Dr. McCollum's assessment that Ms. Davis is disabled. The ALJ similarly gave cursory

consideration to the physical manifestations of plaintiff's diabetes. Ms. Davis testified that she suffered from unpredictable dizzy spells which occur two or three times a week. (Record at 35). She sometimes loses her balance during these dizzy spells unless she quickly supports herself. We find this claim supported in the record. Plaintiff was hospitalized in late April 1983 for an acute condition that required the removal of her gallbladder. During this time plaintiff fell and fractured her nose. (Record at 113). In addition, Ms. Davis undoubtedly suffers from diabetic neuropathy, a deadening of the nerves in her extremities. (Record at 122, 125, 151). Her grip strength is diminished (Record at 139), and she has no reaction to a pin prick test in her lower legs and feet. (Record at 125).

Given these conditions, we find it unsettling that the Secretary would consider Ms. Davis fit to return to her former occupation as a drill press operator. Drill presses, of course, are generally found in machine shops, along with other types of potentially hazardous machinery. Plaintiff's last job required her to drill precise holes in steel parts according to blueprint specifications. While working, she was on her feet for the length of an eight hour day. One need not possess a vocational degree to determine that this job requires a fair amount of stamina and concentration, particularly to avoid injury. We find it a mechanical, unacceptable application of Social Security standards for the Secretary to decide that a 56 year old woman suffering from frequent dizziness and loss of sensation in her extremities is fit to operate such machinery. The substantial evidence standard which we apply has been defined as a test for "evidence which a reasoning mind would accept as sufficient to support a conclusion." *Chicager v. Califano*, 574 F.2d 161, 164 (3d Cir.1978). We cannot agree that the medical evidence supports the Secretary's conclusion.

We have found additional deficiencies in the Secretary's consideration of this case which ultimately affect the decision of plaintiff's claim. For example, the ALJ

states in his opinion that Ms. Davis is "capable of shopping and ... preparing her own meals," (Record at 15), when she flatly testified that her daughter shops and prepares meals for her.[1] (Record at 38). The ALJ ostensibly considered plaintiff's demeanor at the hearing when he discounts her testimony about pain. (Record at 16). But he does not describe her demeanor for the reviewing court. This gives us little basis to find that her testimony about debilitating joint pain is contradicted. The ALJ similarly stated that he considered her impairments individually and in combination, but gave no explanation of what the combined effects might be, or whether they exist at all. While Ms. Davis was represented at the hearing by competent counsel, the ALJ himself might have questioned her to shed light on any doubtful issues in his mind, or that he might predict would be on the minds of a reviewing court. But the ALJ asked only two substantive questions at the hearing.[2]

In light of our findings above, this performance falls short of reaching findings that are "as comprehensive and analytical as feasible and where appropriate ... include a statement of subordinate factual foundations on which ultimate factual conclusions are based." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). We recognize that the form and quality of evidence are often inconsistent from case to case. But we will not lightly make exceptions to strict observance of the ALJ's obligation to develop a full record, analyze all testimony and medical information, and explain his findings. He must satisfy the requirements of a reviewing court which must be able to reconstruct the grounds for his decision. We may not speculate on an ALJ's findings. *Id.* In addition, fairness to the claimant under this liberally construed, remedial legislation dictates that the claimant have the benefit of an explanation of how all the facts and law were considered in reaching a decision.

We conclude that deficiencies in the ALJ's consideration of this case indicate that the Secretary's denial of benefits is not supported by substantial evidence. The most reliable and informative evidence of Ms. Davis' condition appears to be the series of reports written by Dr. McCollum and Dr. Ung. The ALJ found Dr. McCollum's report of December 19, 1983 to be of no probative value, (Record at 16), because it contained an opinion about the ultimate issue of this matter, claimant's disability. As quoted above, Dr. McCollum stated that Ms. Davis had little hope of returning to any type of employment. Dr. McCollum's diagnosis is not merely conclusory. He has been treating Ms. Davis continually since February 1981. She visited his office monthly during that year. (Record at 122). He has been her attending physician during her hospitalizations. We find that his December 1983 diagnosis has sufficient indicators of reliability in that it is supported by thorough experience with plaintiff's condition. Furthermore, his assessment is supported by Dr. Ung, the other physician who is most familiar with the impairments of which Ms. Davis complains. (Record at 125). Dr. Ung's diagnosis echoes Dr. McCollum's in its findings of the uncontrolled state of plaintiff's diabetes, its effects on her nervous system, and the expectations of her condition becoming worse due to the liable nature of the disease. We will, therefore, reverse the Secretary's findings and order disability benefits paid from the date of plaintiff's application.

---

**1.** Otherwise, plaintiff testified that she prepares TV dinners for herself. (Record at 38).

**2.** (Record at 42). The ALJ asked when plaintiff stopped driving and whether she had assistance in completing a certain report.