**John WANCEVICH and Silvia Wancevich, Plaintiffs,**

v.

**Margaret HECKLER, Secretary of Health & Human Services, Defendant.**

Civ. A. No. 85–3606.

United States District Court, D. New Jersey.

Aug. 12, 1986.

Shanley & Fisher, P.C. by Susan M. Sharko and Kenneth L. McElwee, Morristown, N.J., for plaintiffs.

Thomas W. Greelish, U.S. Atty. by Violi S. Lordi, Sp. Asst. U.S. Atty., for defendant.

## OPINION

DEBEVOISE, District Judge.

### NATURE OF THE ACTION

This action is brought under § 205(g) of the Social Security Act, as amended (hereinafter "Act") 42 U.S.C. § 405(g), to review the final determination of the Secretary of Health and Human Services (hereinafter "the Secretary") which denied plaintiff's application for disability insurance benefits.

### PRIOR PROCEEDINGS

Plaintiff, John Wancevich, was found disabled within the meaning of the Act beginning December 25, 1979 (Tr. 10). On December 16, 1982, due to plaintiff's return to work, the Social Security Administration determined that he had completed a nine month trial work period in November 1981 and became able to do substantial gainful work in March 1982 (Tr. 58). Plaintiff filed

a request for reconsideration on February 15, 1983. The determination was affirmed in May 1983 (Tr. 60–62). At plaintiff's request a hearing was held before an Administrative Law Judge (hereinafter "ALJ") to redetermine the date on which his disability ceased (Tr. 18–20). On August 28, 1984 the ALJ found that plaintiff's disability ended as of November 1981 and his entitlement to Disability Insurance Benefits ended effective January 31, 1982 (Tr. 8–10). Plaintiff filed a request for review of the ALJ's decision on October 22, 1984. On May 17, 1985 the Appeals Council modified the ALJ's decision, finding that plaintiff's disability ended in May 1982 and his entitlement to Disability Insurance Benefits ended effective July 31, 1982 (Tr. 3–5). The Appeals Council accepted plaintiff's position that his trial work period ended April 1982 (Tr. 4). However, it rejected plaintiff's argument that he was disabled during the summer months (Tr. 5). On July 19, 1985 plaintiff filed this action for review of the Secretary's decision.

## STATEMENT OF FACTS

Plaintiff, who was born in 1946, was a full-time high school English teacher from 1973 to 1979 (Tr. 43, 56). On December 25, 1979 plaintiff suffered injuries from a car accident which left him quadriplegic with no movement from the neck down (Tr. 49). Despite his severe physical limitations plaintiff returned to teaching on a part-time basis in February 1981. He worked part-time from February to June 1981, September 1981 to October 1981 and March 1982 to June 1982. During that period because of complications caused by his paraplegia plaintiff was unable to work on the following days in 1981: March 5 and 23, April 3 and 10, May 26 and 27, June 3, October 28–30, November 2–December 23; and plaintiff was unable to work on the following days in 1982: January 2–March 1 and March 29. He continues today to work part-time from September through June (Tr. 29–32).

Plaintiff testified at the hearing before the ALJ that his paralysis causes him to experience recurrent skin disorders resulting from prolonged sitting in one position. Plaintiff's skin condition periodically required confinement in bed during his first year of employment (Tr. 39). Plaintiff's treating physicians confirm the serious medical problems resulting from plaintiff's quadriplegia.

Dr. Sanders Davis, in a letter dated November 17, 1983, stated that plaintiff was under his care for rehabilitation following a spinal cord injury and resulting quadriplegia, sensory loss below C–5, neurogenic bowel and bladder incontinence, and automatic nervous system dysfunction. Dr. Davis described plaintiff as having lost the ability to perspire below the C–5 level, requiring him to avoid becoming overheated. Dr. Davis recommended that plaintiff confine his work to the fall, winter and spring months unless he can be assured of an air-conditioned work environment (Tr. 65). Dr. Claudio Petrillo confirmed the findings of Dr. Davis in his report dated August 2, 1982.

Plaintiff testified before the ALJ as to the assistance he needs to teach class. Teacher's aides and his students write on the blackboard, run errands, take attendance, distribute papers and perform all other classroom chores requiring movement (Tr. 32–33). Plaintiff's wife also assists him by marking his student's papers at his direction and by keeping his records (Tr. 33).

## DISCUSSION

Under the provisions of the Act disability is defined as inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of twelve months. 20 C.F.R. § 404.1505(a). The Third Circuit has developed a two pronged test to determine an individual's eligibility for disability benefits: (1) determination of the extent of the impairment and (2) determination whether the impairment prevents an individual from engaging in substantial gainful activity. *Rossi v.*

*Califano,* 602 F.2d 55 (3d Cir.1979). Certain physical conditions, listed in Appendix I. Pt. 404, Subpt. P., are automatically considered impairments and thus meet the first prong of the test. Plaintiff's quadriplegia, resulting in his inability to move from the neck down, is a listed impairment meeting the first prong of the test. However, the second prong of the test must also be satisfied for benefits to be awarded. Plaintiff must therefore prove that his employment is not substantial gainful activity.

Substantial gainful activity is defined as work that involves significant and productive physical or mental activities for pay or profit. 20 C.F.R. § 404.1510. The work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than prior to his impairment. 20 C.F.R. § 404.1572. If an individual's duties require use of his experience, skills, supervision and responsibilities or contribute substantially to the operation of a business this tends to show that he has the ability to work at the substantial gainful activity level. 20 C.F.R. 404.1573(a). However, if an individual is unable, because of his impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that the claimant is not working at the substantial gainful activity level. 20 C.F.R. § 404.-1573(b).

In addition to the above criteria, the regulations also provide that earnings from work may demonstrate that an individual is able to perform substantial gainful activity. 20 C.F.R. § 404.1574(a)(1). As of 1980, if an individual's earnings averaged more than $300 per month a presumption is created that the individual is engaged in substantial gainful activity. 20 C.F.R. 1574 (b)(2).

Thus, substantial gainful activity consists of two components: "compensation and substantiality of the activity itself." *Patane v. Harris,* 507 F.Supp. 115, 117 (E.D.Pa.1981). While the amount of earnings is relevant to the determination of disability, the ability to earn wages in excess of the $300 limit will not necessarily preclude benefits if the individual is unable to engage in substantial work activity

Plaintiff claims that he is entitled to disability benefits during the months of July and August when he cannot work as a teacher. He disagrees with the ALJ's use of the $300 average monthly limit to preclude him from receiving benefits because he asserts he is not engaged in substantial work activity.

Plaintiff claims that because he cannot move he is unable to perform even the simplest of tasks, and he cannot engage in the work teachers often perform after the school day, such as coaching athletic teams. In addition, he is often absent as a result of his impairment. The temperature of his work environment must be carefully regulated because he is unable to perspire below the neck. He requires the assistance of a teacher's aide in instructing his class. During the summer months the school at which plaintiff teaches is not air-conditioned and does not provide teacher's aides. Plaintiff contends that due to all of the above factors he cannot teach and therefore, his condition meets the definition of disability pursuant to 20 C.F.R. 404.1505(a), during the months of July and August.

Plaintiff asserts that the Appeals Council's decision that he is not disabled during the summer months is not supported by substantial evidence. Plaintiff contends that he does not work during the summer months because it is physically impossible for him to do so, not, as the Appeals Council finds, simply because he is a school teacher. Plaintiff offers as supporting evidence statistics which show that most male secondary school teachers work in the summer (Tr. 66–72).

Plaintiff next points to the Appeals Council's finding that a report by plaintiff's attending physician, which states that plaintiff should refrain from working unless he is assured a climate-controlled environment (Tr. 65), constitutes substantial evidence of plaintiff's ability to work during the summer. Plaintiff contends that this

finding is based on the theoretical assumption, unsupported by evidence, that air-conditioned teaching environments with all the supportive assistance plaintiff requires exist. *See Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 861 (8th Cir.1978). Plaintiff stresses that the government must demonstrate that a significant number of employment opportunities are available to him in the national economy. Citing, *Ray v. Secretary of Health, Education and Welfare,* 465 F.Supp. 832 (E.D.Mich.1978); *Leonard v. Heckler,* 582 F.Supp. 389 (M.D.Pa.1983).

The government claims that in deciding to terminate plaintiff's disability benefits, the Secretary considered both the wages earned by the plaintiff and his ability to perform substantial gainful work activity. The government maintains that a presumption is created that a claimant is not disabled when he earns more than $300 per month. However, the government concedes that the nature of the work and how well it is performed must also be considered. The government asserts that plaintiff's salary, which is in excess of $1,400 per month, is significantly above the $300 level. In addition, the government maintains that although plaintiff requires assistance in the manual aspects of his job the teaching is accomplished exclusively by plaintiff, and the amount of time spent teaching is substantial.

█ The Appeals Council's finding that "[t]here is no basis to determine that claimant is disabled during the summer months, because of an inability to work" is not supported by substantial evidence. All the evidence is to the contrary. However, as will be noted below, that error alone is insufficient to entitle plaintiff to benefits.

By virtue of plaintiff's severe handicap the circumstances under which plaintiff can work are probably unique—a supportive school system which can accept his frequent absences and provide him with the assistance of teachers' aides and student help, a wife who can perform many of his administrative tasks, and a regulated temperature at the work place, which the partic-ular school does not have in the summer months since it does not have air conditioning. The Appeals Council, relying solely on Dr. Davis' recommendation that plaintiff's work be confined to fall, winter and spring unless he can be assured of an air conditioned environment; totally disregards the requirements necessary to enable plaintiff to work and necessarily assumes that these requirements can be found in some air-conditioned environment.

Disability takes into account two factors—degree of impairment and the demands of the job. Heat tolerance is a job demand in work environments without air-conditioning. There is nothing to support that there is any school other than the Kearny High School which will provide plaintiff with the assistance he needs in order to teach and which also has air-conditioning. Thus, plaintiff's impairment precludes him from meeting his job demands at least two months of the year. However, this finding, without more is insufficient to require reversal in this case.

Plaintiff's request for only two months of benefits each year is a novel one and shows his good intention not to overburden the Social Security system. However, the language of the Social Security regulations does not provide for an arrangement whereby a claimant can go on disability payments for two months and then off payments for ten months each year. See 20 C.F.R. § 404.1592, 1592a.

█ The government is correct in stating that if an individual returns to his former job the burden of proof does not shift to the Secretary to show there are other jobs available in the national economy. It is assumed that the claimant is ineligible for benefits while working unless the work activity is found not to be "substantial" and "gainful". *Rossi v. Califano, supra.* However, it does not follow that if an individual is able to work part of the year he is able to work continually unless there is a change in his impairment. An individual with an impairment may become disabled when the demands of the job change so that he is no longer able to work. How-

ever, although the plaintiff may be disabled because he cannot work in the hot weather, yet the narrow structure of the regulations does not provide for temporary but reoccurring conditions of disability. Thus, for this two month period, the burden does not shift to the Secretary to show the existence of other jobs in the national economy which the plaintiff is able to perform.

The critical question in the case is whether the Secretary's finding that the work plaintiff performs is substantial gainful activity is supported by substantial evidence. I conclude it is not.

The ALJ and the Appeals Council totally ignore the critical fact that plaintiff is unable to teach without the continual help of a teacher's aide, his wife and students. The failure to consider this fact led to misapplication of the presumption which arises by virtue of monthly payments of $300 or more and to the totally insupportable conclusion that plaintiff's "earnings represent the claimant's own productivity." The ALJ and Appeals Council failed to give effect to 20 C.F.R. § 404.1573(b) which states that inability of an individual, because of his impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work may show a claimant is not working at the substantial gainful activity level. The ALJ and the Appeals Council, by disregarding the assistance plaintiff received and the accomodating stance of the school system, ignored the teachings of *Chicager v. Califano*, 574 F.2d 161 (3d Cir.1978) and *Hanes v. Celebrezze*, 337 F.2d 209 (4th Cir.1964).

In *Chicager*, claimant suffered from lupus erythematosus, an incurable, degenerative skin disease. *Id.* 574 F.2d at 162. He was forced to leave his job as a grinder because of this impairment and finally twenty years later he obtained a job as a truck dispatcher. *Id.* He earned $520 in 1966, $3,525 in 1967 and $2,475 in 1968 which exceeded the $140 per month limit then in place. Chicager was thereby found to be engaged in substantial gainful activity. The court reversed, finding that his work was not substantial because he was frequently absent from work and was unable to do the simplest tasks without the assistance of his co-workers. *Id.* at 164. The court held that Chicager's performance did not meet the test of adequacy in 20 C.F.R. § 404.1532(d) (presently found in 20 C.F.R. 404.1573(b)).

In *Hanes,* the court stated:

[W]here the claimant is provided with a job as a charitable gesture and his earnings bear little relationship to the value of his services, it is apparent, and indeed recognized in the regulations, that his earnings are entitled to slight weight in determining his ability to engage in substantial gainful activity. 20 C.F.R. § 404:1534(a).

*Hanes,* 337 F.2d 214. In the instant case, plaintiff would simply be unable to attempt teaching without the continual help of a teacher's aide, his wife and students, and he could not continue to teach unless the school system accepted his frequent, unavoidable absences.

The argument that a disabled person's earnings should be reduced by the value of assistance provided to him is by no means novel. The regulations themselves provide:

We do not consider any income not directly related to your productivity when we decide whether you have done substantial gainful activity. If your earnings are being subsidized, the amount of the subsidy is not counted when we determine whether or not your work is substantial gainful activity. Thus, where work is done under special conditions, we only consider the amount of your pay which you actually "earn".

20 C.F.R. § 404.1574(a)(2). Hence, in light of the continual assistance he requires, plaintiff's earnings as a part-time school teacher do not constitute substantial evidence of his ability to engage in substantial gainful employment. The ALJ's and Appeal Council's reliance on the presumption arising from the amount of the payments to plaintiff was erroneous because of their failure to consider the multiple forms of

assistance provided to plaintiff. The ALJ and the Appeals Council failed to apply 20 C.F.R. §§ 404.1573(b) and 404.1574(a)(2) and they failed to apply the teachings of *Chicager* and *Hanes.*

█ There is nothing in the record to establish the monetary value of the services of plaintiff's wife, the teacher's aide and the students, nor is there anything in the record to establish the other costs to the school system incurred to enable plaintiff to teach. The aggregate value, however, must be very substantial, off-setting to a major degree the salary paid to plaintiff. In such circumstances the presumption is rebutted.

█ This conclusion is not affected by the fact that in terms of intangible values plaintiff is providing the school system and his students with something money cannot buy and which he, perhaps, is uniquely qualified to give. Every student who attends his classes will not only be taught English, he or she will receive a lesson in courage and one way in which a human being can respond to inexplicable disaster. Since such values have no monetary equivalent they in no way enter into the computation of the monetary value of plaintiff's services.

Thus, the Secretary erred in his determination that plaintiff's entitlement to a period of disability and disability insurance benefits ended. The determination will be reversed and the case remanded with directions to the Secretary to resume payment of benefits and otherwise to proceed in a manner consistent with this opinion.

The court will enter its own order.