David J. NAZZARO, Plaintiff,

v.

John J. CALLAHAN,[1] Acting Commissioner, United States Social Security Administration, Defendant.

No. 95–CV–539A.

United States District Court,
W.D. New York.

Sept. 9, 1997.

---

1. John J. Callahan has been substituted, in place of Shirley S. Chater, as a party to this action pursuant to Fed. R. Civ. P. 25(d).

Neighborhood Legal Services, Inc., James R. Sheldon, Jr., of counsel, Buffalo, NY, for Plaintiff.

Patrick H. NeMoyer, United States Attorney, Mary K. Roach, Assistant United States Attorney, of counsel, Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(B) on October 27, 1995. On March 22, 1996, defendant filed a motion for judgment on the pleadings and on June 28, 1996, plaintiff filed a cross motion for judgment on the pleadings. On March 27, 1997, Magistrate Judge Foschio filed a Report and Recommendation denying defendant's motion for judgment on the pleadings and granting plaintiff's cross motion for judgment on the pleadings in part, denying it in part, and remanding the matter for reconsideration.

Plaintiff filed objections to the Report and Recommendation on April 4, 1997, only as to the finding that plaintiff's job coach assistance was not a subsidy. On April 11, 1997, defendant filed a memorandum opposing plaintiff's objections and on April 23, 1997, plaintiff submitted a reply brief. On April 30, 1997, plaintiff moved to adjourn the date for oral argument and this motion was granted. Oral argument was held on July 10, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of those portions of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant's motion for judgment on the pleadings is denied and plaintiff's cross motion for judgment on the pleadings is granted in part, denied in part, and remanded for reconsideration.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned for report and recommendation, by the honorable Richard J. Arcara on October 27,1995, pursuant to 28 U.S.C. § 636(b)(1)(B), and is presently before the court on Defendant's motion for judgment on the pleadings, filed March 22,1996, and Plaintiff's cross-motion for judgment on the pleadings and to vacate the Appeals Council decision and remand this matter for reconsideration, filed June 28, 1996.

### *BACKGROUND*

Plaintiff, David J. Nazzaro, seeks review of the Defendant's decision denying him Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (1995), which provides supplemental security income ("SSI") benefits to individuals who have attained the age of sixty-five or are blind or disabled. In denying Nazzaro's application for benefits, Defendant determined that Nazzaro was engaged in substantial gainful activity ("SGA"), (R. 17–18), and that Nazzaro possessed the residual functional capacity to perform work-related activities except for work involving tolerance of undue stress and was, therefore, not disabled as defined by the Social Security Act. (R. 18).[1] Nazzaro argues that the ALJ erred in failing to consider whether his earnings were subsidized and whether the special employment conditions created by the job coach services provided to Nazzaro by the Western

---

1. R. references refer to the page number of the administrative record submitted in this case.

New York Association for the Learning Disabled establish that Nazzaro is not engaged in SGA.

## PROCEDURAL HISTORY

Nazzaro initially filed for disability benefits on April 14, 1993. (R. 44–46). That application was denied on May 14, 1993, (R. 47–51), and a request for reconsideration was filed on July 5, 1993. (R. 52). Nazzaro's claim for benefits was again denied on October 1, 1993, (R. 53–56), and Nazzaro appealed that determination.[2] (R. 27–31).

On February 10, 1994 a hearing was held in Buffalo, New York before an administrative law judge ("ALJ"), Office of Hearings and Appeals of the Social Security Administration, Department of Health and Human Services, regarding the denial of disability benefits. (R. 33–43). On September 2, 1994, the ALJ rendered his decision, denying Nazzaro disability benefits. (R. 14–19). Nazzaro then, on November 4, 1994, requested a review of the hearing decision by the Secretary. (R. 5–13). On May 15, 1995, the Appeals Council concluded that there was no basis for granting the request for review, and that the decision of the ALJ was the final decision of the Social Security Administration. (R. 3–4).

Thereafter, on July 7, 1995, Nazzaro filed this action seeking review of the administrative decision. The matter was referred to the undersigned on October 27, 1995. On March 22, 1996 Defendant filed a motion for judgment on the pleadings and a memorandum of law in support of that motion. On June 28, 1996, Nazzaro filed a cross motion for judgment on the pleadings with an accompanying memorandum of law. On August 13, 1996, Defendant filed a supplemental memorandum of law in support of Defendant's motion for judgment on the pleadings. No oral argument was deemed necessary.

For the reasons as set forth below, the Defendant's motion for judgment on the pleadings (Doc. # 6) should be DENIED; Plaintiff's cross motion for judgment on the pleadings (Doc. # 9) should be DENIED in part and GRANTED in part and REMANDED for reconsideration.

## FACTS

David Nazzaro, has been severely learning disabled since birth. (R. 82). According to Nazzaro's West Seneca Central School District Psychological Reevaluation, dated November 27, 1985, Nazzaro was determined to be on the borderline of intellectual functioning. Although Nazzaro graduated high school in 1986 with a local diploma, his reading skills were determined to be at the 7th and 8th grade level, and his high school curriculum was modified and permitted use of a calculator, extended test-taking time, and individualized test-taking situations. (R. 114).

Nazzaro has deficiencies in processing information, including extracting relevant from extraneous information. Nazzaro's home life was described as unstable, his parents were divorced, and his father has spent time in the Buffalo Psychiatric Center in an effort to regain stability in his own life. Nazzaro's older brother was clearly favored by his father and worked for the father in the family business, although it was not expected that Nazzaro would join them, and Nazzaro was often made the scapegoat of family problems. Most of Nazzaro's support came from his stepmother who was more willing to engage him in conversations and attended Nazzaro's parent-teacher conferences. Nazzaro's stepmother, teachers, and the school psychologist all describe Nazzaro as having a vulnerable personality, manifested in his being socially withdrawn, lacking in confidence and having low self-esteem. These traits were attributed in part to his lack of early maternal bonding. At that time, it was recommended that Nazzaro receive psychological counseling and support and that he be encouraged to develop skills which would prepare him for

2.  On March 4, 1994, Nazzaro filed another application for disability benefits. (R. 132–35). Because Nazzaro's second disability benefits application involved similar disability issues, the ALJ proposed consolidating the application with Nazzaro's previous application which was already at the hearing level. As Nazzaro did not object, the applications were consolidated and no further action was taken on Nazzaro's second application independent of his original application. (R. 136).

employment after high school. It was further noted that with proper support Nazzaro may be able continue his education at the associate degree level. (R. 114–117). No other psychological evaluation of Nazzaro is in the record.

As of February 10, 1994, the date of the hearing before the ALJ, Nazzaro was twenty-seven years old and, although still considered as severely learning disabled, was attending Erie Community College in pursuit of a culinary arts degree. (R. 36, 44, 86). Nazzaro lived with a roommate in Kenmore, New York in a "supportive apartment" run by the Western New York Association for the Learning Disabled ("WNYALD"). (R. 36). The supportive apartment program was established to help learning impaired individuals acquire independent living skills. (R. 87).

Nazzaro first became involved with the WNYALD Supported Employment Program in September 1986. (R. 93). The Supported Employment Program provides on-site support to learning disabled adults to aid then in obtaining and maintaining employment. (R. 93). The WNYALD conducted a vocational evaluation of Nazzaro which revealed severe deficits in the areas of reasoning, perceptual speed and memory, signaling difficulty processing and integrating new information. (R. 93). Nazzaro's ability to conceptualize, organize, manipulate information and abstract thinking were also severely impaired, and were coupled with perceptual problems, demonstrating the need for sequential task repetition in learning new skills. (R. 93). Additionally, Nazzaro was found to have emotional difficulties including high levels of anxiety, need to control, insecurity and very low self esteem, and was socially and emotionally isolated. (R. 93).

Since graduating from high school in 1986 Nazzaro had held three regular jobs as of the date of the ALJ hearing. (R. 36, 37, 60–62). He worked as a dishwasher at the Saturn Club, a local private club, during 1987 and 1988. (R. 37, 60, 62). Nazzaro next worked as a baker at a Bells Market grocery store, during 1988 and 1989. (60–61, 62). Nazzaro started his most recent job in the bakery at TOPS Friendly Markets ("TOPS"), a super-market located on Delaware Avenue in Buffalo, in May 1989. (R. 61, 62). All three of these jobs were obtained through the WNYALD's supported employment program. (R. 64). In connection with that program. Nazzaro was provided with a job coach, paid by WNYALD, who assisted Nazzaro in adapting to his jobs, including learning new job duties and safety aspects of the job, and acting as an intermediary between Nazzaro and his boss whenever Nazzaro experienced coping difficulties in the work setting. (R. 40–41, 64).

Nazzaro has received job coaching services from the WNYALD since he began working in 1986. When Nazzaro began working part time in the bakery department at TOPS, he received constant job coaching during the workday for the first three months to train him on all job duties until he could remember those duties in sequence and perform them independently, to teach him how to handle frustration and anxiety on the job, to assist him in increasing his job performance speed, increasing his self confidence, and to interact effectively and appropriately with supervisors and co-workers. (R. 94).

According to Nazzaro, without the assistance of a job coach, he would be unable to maintain any employment, (Plaintiff's Memorandum of Law, pp. 21–22), although when asked at the administrative hearing whether he thought he could perform his job without the job coach, Nazzaro replied, "I think so." (R. 41). Nazzaro later explained that he told the ALJ that he thought he could handle his job without the job coach's assistance because that is what he thought the ALJ wanted to hear, and submitted letters from his case manager and the Vocational Services Program Director at the WNYALD in support of Nazzaro's continued need for job coach assistance to maintain any level of employment. (R. 138–140; Plaintiff's Memorandum of Law, at p. 7). Nazzaro's job coach did not attend the hearing. (R. 139).

According to the information submitted by Nazzaro's employer, TOPS, Nazzaro's gross earnings were $8,411.01 in 1990, $7,775.90 in 1991, $6,451.59 in 1992 and $2,058.02 for the first four months on 1993. (R. 70–71). Addi-

tionally, Nazzaro earned $4,230.54 at the Saturn Club in 1988. (R. 72–73).

In the employee Work Activity Report Nazzaro completed in connection with the application for disability benefits, described his job duties in the TOPS bakery department as including measuring ingredients into and running dough mixing machines, operating ovens and doughnut fryers, cleaning the equipment and surrounding areas, and making muffins and dinner rolls. He stated that he did not regularly incur any special expenses related to his disability for work. (R. 62–65).

Nazzaro claimed April 1, 1988 as the date of the onset of his disability. (R. 44). This date coincides with the date that Nazzaro first became eligible for disability benefits based on his own work record.

On May 10, 1993, Nazzaro's manager at TOPS, Paula Huber, completed the SSA's Employer's Work Activity Questionnaire, on which she indicated that Nazzaro's work was fully worth the amount paid. (R. 66–67). On May 14, 1993, Nazzaro's claim for disability benefits was denied by SSA based on Nazzaro's income and the fact that Nazzaro's manager had indicated that she considered Nazzaro's work to be fully worth the amount paid. (R. 47–51). Nothing in the record indicates that any determination as to whether Nazzaro's wages were subsidized was made when the SSA first determined that Nazzaro was engaged in SGA. On July 5, 1993 Nazzaro filed a request for reconsideration of the denial. (R. 52). On July 8, 1993, the SSA was advised that Nazzaro's employment was supported employment and that Nazzaro received assistance from a job coach supplied by WNYALD. Nazzaro's SSA case worker contacted Denise Lucas–Newton at the WNYALD, who provided information as to Nazzaro's annual earnings. In a Report of Contact dated September 17, 1993, Nazzaro's SSA case worker indicated that based on the information provided by the WNYALD, Nazzaro's income level was in excess of the monthly SGA limit of $500. Additionally, the SSA case worker reported that even if Nazzaro's earnings were subsidized at the rate of $100 per month, his earnings would still be well in excess of the SGA limit. No explana-

tion for the $100 figure was provided. (R. 90–92).

Nazzaro's application was again denied following reconsideration on October 1, 1993. (R. 53–56). Upon reconsideration, however, the SSA did determine that Nazzaro's wages were subsidized, but that Nazzaro was, notwithstanding, engaged in SGA. (R. 54).

By letter dated July 23, 1993, the WNYALD advised the SSA advised the SSA of the severity of Nazzaro's learning disability and described the services provided to Nazzaro by the job coach. According to the letter, Nazzaro requires extensive reinforcement from the job coach to assist him in appropriate interaction with coworkers and supervisors, and learning his job duties. At that time the WNYALD anticipated that Nazzaro would require on-going support services from the program indefinitely and that without such support Nazzaro would not be currently employed. (R. 93–95).

On September 13, 1993 the WNYALD provided the SSA with a monthly breakdown of the number of hours for which Nazzaro's work was supported by the job coach since Nazzaro first became employed in 1986. According to this data, Nazzaro's need for job coach assistance ranged from a low of two hours per month to a high of sixty-eight hours per month, between October 1986 and August 1993. (R. 74–76).

In a letter to the SSA dated February 17, 1994, Barbara A. Oeschger, the WNYALD Vocational Services · Program Director explained that although the WNYALD's own internal policy and regulations for the Supported Employment Job Coaching Program requires that a job coach meet with the learning disabled employee a minimum of two times per month for at least two hours, Nazzaro consistently exceeded that minimum requirement. (R. 112–113).

The SSA considered this information in reconsidering Nazzaro's application and assumed that Nazzaro's gross earnings as reported by his employers included a subsidy which the SSA calculated by multiplying the number of monthly support hours reported by the WNYALD by Nazzaro's hourly wage rate for that same period. (R. 77–79). It is

undisputed that since beginning working 1986, Nazzaro was always paid at least the minimum wage, which was $3.35 from October 1986 to March 1990, $3.80 per hour from April 1990 to March 1991, and $4.25 from April 1991 until September 1993, the last date for which such information is available on the record. (R. 96–97). For example, in 1990 and 1991 Nazzaro earned $4.50 per hour; in 1992 Nazzaro earned $4.95 per hour; and in 1993, Nazzaro's hourly wage rate was $5.25 per hour. (R. 97). By letter dated February 9, 1994, Barbara A. Oeschger informed Nazzaro's attorney, Elizabeth White, that if Nazzaro were required to pay for the job coach services provided to him by the WNYALD, he would be billed at the hourly rate of $18.41. (R. 107).

On February 18, 1994, Elizabeth White explained in a letter to the ALJ that although the SSA did factor in a subsidy upon reconsideration of Nazzaro's disability benefits application, the SSA was, notwithstanding, incorrect in its determination that Nazzaro was engaged in SGA because the SSA based the calculated subsidy on Nazzaro's current hourly rate ($5.25), rather than on the job coach's hourly rate ($18.41). According to Nazzaro, had the subsidy been calculated based on the job coach's hourly rate, Nazzaro would have earned substantially less than $500 per month. Additionally, Nazzaro asserts that the wrong monthly wages were considered by SSA in its calculation and that had the correct monthly wages been considered, then even if the subsidy were calculated based on Nazzaro's hourly rate, Nazzaro's earnings would have consistently fallen below $500 per month, a level sufficiently low to entitle him to create a rebuttable presumption that Nazzaro was not engaged in SGA and may be entitled to SSI benefits. (R. 108–111).

In a Disability Report filed by Nazzaro on March 31, 1994, Nazzaro indicated that his disability had affected the number of hours he could work, that he met with his case manager at the WNYALD, John Ashe once a week and that his disability limits the types of employment he can perform. Nazzaro reported that he cooks daily, shops and cleans weekly, attends movies and concerts, and visits with friends and relatives on a weekly basis. Nazzaro does not drive and depends on public transportation. The SSA employee who took Nazzaro's application noted that Nazzaro appeared very stressful during the interview, had a difficult time following instructions, appeared to be very limited in the type of work he could handle, and would not be able to handle a job which involved any degree of stress. No physical difficulties were observed. (R. 125–29).

Nazzaro's WNYALD case manager, John Ashe, reported in a letter dated July 7, 1994, that he was familiar with Nazzaro's situation from working with Nazzaro for more than six years. According to Ashe, Nazzaro's learning disability is permanent, neurologically based, clearly debilitating, and greatly limits Nazzaro's cognitive functioning, mathematical and analytical reasoning skills, and judgment. Additionally, Nazzaro's lack of self confidence and poor verbal and non-verbal skills foster his social isolation both at home and at work. (R. 139–140).

### DISCUSSION

An individual is entitled to Supplemental Security Income under the Social Security Act if the individual is unable:

> ... to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.... An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(1), (2).

Once the claimant proves that he is severely impaired and is unable to perform any past relevant work, the burden shifts to the Secretary to prove that there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

## I. Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding Supplemental Security Income, 42 U.S.C. §§ 1381–1385 (1994), is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938).

When the Secretary is evaluating a claim, she must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and ... educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983) (quoting *Miles v. Harris*, 645 F.2d 122 (2d Cir.1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.[3] *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Secretary's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas v. Schweiker, supra*, at 1550; 42 U.S.C. § 405(g) (1994); 42 U.S.C. § 1383(c)(3) (1994). "Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

The federal regulations set forth a five-step analysis that the Secretary must follow in determining eligibility for supplemental security income benefits. 20 C.F.R. §§ 404.1520, 416.920 (1994). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982). The first step is to determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the individual is engaged in such activity the inquiry ceases and the individual cannot be eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits his physical or mental ability to do basic work activities, as defined in the regulations. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent a defined impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d), 416.920(d), as, in such a case, there is a presumption that an applicant with such an impairment is unable to perform substantial gainful activity.[4] 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520. *See also Cosme v. Bowen*, 1986 WL 12118, at *2 (S.D.N.Y.1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y.1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Secretary must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Secretary will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v.*

---

3. The treating physician's opinion is given greater weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir.1983).

4. The applicant must meet the duration requirement which mandates that the impairment must last for at least a twelve month period. 20 C.F.R. § 404.1509 (1994).

*Schweiker, supra,* at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his] past work"). If the Secretary finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Secretary bears the burden of proof on the final step relating to other employment. *Berry, supra,* at 467. In reviewing the administrative finding, the court must follow this five-step analysis to determine if there was substantial evidence on which the Secretary based her decision. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

### 1. *Substantial Gainful Activity*

■ The first inquiry is to determine whether the applicant is engaged in substantial gainful activity ("SGA"). "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties and is done for pay or profit." 20 C.F.R. § 404.1510 (1996). Earnings are the primary criteria in establishing SGA. 20 C.F.R. §§ 404.1574(a)(1) and 416.974(a)(1); Social Security Ruling 83–33. Earnings which averaged more than $500 per month in calendar years 1989 and thereafter will ordinarily establish that a claimant has engaged in SGA. 20 C.F.R. §§ 404.1574(b)(2)(vii) · and 416.973(b)(2)(vii). However, only the amount that a claimant actually *earns* is considered in establishing whether that claimant is involved in SGA. 20 C.F.R. § 404.1574(a)(2), 20 C.F.R. § 416.974(a)(2). The applicable regulations provide for excluding from a claimant's earnings any subsidies. *Id.* Additionally, where work is done under special conditions that are tantamount to a subsidy the SSA only considers the part of the applicant's pay which the applicant actually earns. *Id.* Similarly, any "impairment related work expenses," defined as the reasonable costs of

certain items and services required by an impaired individual which enable that individual to work, are subtracted in determining an applicant's monthly income. 20 C.F.R. § 404.1576(a).[5] ·

The SSA's determination that Nazzaro was performing SGA was based in part on the SSA's Employer's Work Activity Questionnaire completed by Paula Huber, Nazzaro's manager at TOPS. According to that questionnaire, Huber indicated that she considered Nazzaro's work to be fully worth the amount paid to him. (R. 66–67). Huber was not required to complete the rest of the questionnaire which dealt with whether Nazzaro's pay was subsidized. (R. 66). Thus, Huber was not required to answer the rest of the questions which asked whether Nazzaro was granted any special considerations as compared to a non-impaired individual, to allow him to work, such as fewer or easier duties, expectations of lower work quality or production, fewer or irregular hours, frequent absences, extra help or supervision, more work breaks, or special equipment or transportation. (R. 66). The record also indicates that as TOPS was not paying for the job coach services, that the Defendant's inquiry into whether there was a subsidy included in Nazzaro's gross wages, stopped at the point it was determined that TOPS considered Nazzaro's work to be unsubsidized and fully worth the wages paid to him as reported. Defendant's Memorandum of Law, at p. 8.

Based on this evidence, the ALJ concluded that Nazzaro had been engaged in substantial gainful activity at the time of the administrative hearing. (R. 16–19). The ALJ found that Nazzaro's earnings have always averaged in excess of $500 per month, ranging from a low of $541 in 1992 to $731 in 1990. Further, the ALJ found that although Nazzaro had the assistance of a job coach, that expense is paid for by the WNYALD and, thus, the ALJ impliedly rejected the earlier administrative finding of a subsidy upon reconsideration.[6] (R. 17).

---

**5.** Nazzaro concedes that the cost of the WNYALD job coach is not paid by him and that in his case such costs are not impairment related

work expenses as defined by this regulation. (R. 11, n. 3).

**6.** The court notes inconsistencies in the evidence of record concerning Nazzaro's earnings. While

Nazzaro contends that without the assistance of the WNYALD job coach, he would be incapable of SGA and therefore the ALJ should have calculated the WNYALD's costs of providing the job coach's services as an indirect subsidy to Nazzaro's gross wages, and, in accordance with 20 C.F.R. §§ 404.1574(a)(2) and 416.974(a)(2), deducted such costs from Nazzaro's gross wages. Nazzaro argues that if his reported wages had been reduced by these costs, his income would have been sufficiently lowered to render him eligible for disability benefits. (Plaintiff's Memorandum of Law, at pp. 13–14). The regulations, however, do not provide for this interpretation. Specifically, the regulations provide only that a subsidy may be found where an employer indicates that an employee's work is not worth the value of his pay.

> We do not consider any income not directly related to your productivity when we decide whether you have engaged in substantial gainful activity. If your earnings are being subsidized, the amount of the subsidy is not counted when we determine whether or not your work is substantial gainful activity. Thus, where work is done under special conditions, we only consider the part of your pay which you actually *earn.* For example, where a handicapped person does simple tasks under close and continuous supervision, we would not determine that the person worked at the substantial gainful activity level only on the amount of pay. An employer may set

a specific amount as a subsidy after figuring the reasonable value of the employee's services. If your work is subsidized and the employer does not set the amount of the subsidy or does not adequately explain how the subsidy was figured, we will investigate to see how much your work is worth.

20 C.F.R. §§ 404.1574(a)(2) and 416.974(a)(2) (emphasis in original).

The ALJ's finding is therefore in compliance with the applicable regulations, 20 C.F.R. §§ 404.1574(a)(2) and 416.974(a)(2), which authorize finding an implied subsidy only where the value of an employee's work is less than the wages that the employee receives because the work in performed under closer employer supervision or some other special circumstance as compared to a non-impaired individual. Under such circumstances, the SSA only considers that part of pay that the individually actually earns, *i.e.,* the amount paid discounted by the extra employer supervision or other special circumstances.

Such a subsidy may be found where an employer pays an impaired employee the same wage rate that a non-impaired employee is paid for performing the same job, despite the fact that the impaired employee is less productive or requires more employer supervision or other special conditions to perform the job. Here, Nazzaro's employer clearly indicated these factors did not apply to Nazzaro when his manager stated that Nazzaro's work was fully worth the amount he was paid, although Nazzaro received regu-

---

it is undisputed that at the time of the administrative hearing, Nazzaro had worked on average eighty hours per month, Plaintiff's Memorandum of Law, at p. 4; Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings ("Defendant's Memorandum of Law"), at p. 4, and that Nazzaro earned $4.50 per hour in 1990 and 1991, $4.95 per hour in 1992, and $5.25 per hour in 1993, (R. 97), Nazzaro's gross earnings as reported by TOPS do not reflect that. Based on those figures, Nazzaro's annual earnings should have been approximately $4,320, ($4.50 per hour × 80 hours per month × 12 months per year) for the years 1990 and 1991, and $4,752, ($4.95 per hour × 80 hours per month × 12 months per year) for the year 1992. However, according to the records submitted by TOPS, Nazzaro earned $8411.01 in 1990, $7775.90 in 1991, and $6451.59 in 1992, (R. 71), variances of 95%, 80% and 36% respectively for those years as compared to the arithmetically

projected annual earnings calculated using the undisputed variables of hourly wages rate and hours worked per month. Furthermore, there is no explanation in the record for this inconsistency and the court finds that such inconsistency may be attributed to only four possibilities, (1) Nazzaro's hourly wage rate was higher than reported by TOPS, or (2) Nazzaro worked on average more than eighty hours per month, or (3) some combination of possibility 1 and 2, or (4) something else has been included as gross wages in the report submitted by TOPS, other than true wages earned by Nazzaro, thus skewing the data and rendering Nazzaro's reported gross earnings inconsistent with what would otherwise be mathematically anticipated. As neither side has addressed this matter, however, the court thus assumes that the gross earnings as reported by TOPS accurately reflect the amount of wages received by Nazzaro.

lar assistance from the third party job coach. (R. 67). This evidence is substantial and supports the ALJ's finding Nazzaro's work was not subsidized by his employer, and as such, the value of Nazzaro's work was not less than that of a non-impaired individual performing the same job without additional assistance.

The court also notes that the regulations do not permit finding, as asserted by Nazzaro, an implied subsidy in a work situation where additional supervision is provided by a third-party who is not paid for by the employer. Plaintiff's Memorandum of Law, at pp. 13–14.[7]

■ Nazzaro also argues that the use of a job coach may indicate that an employee is not working at the SGA level if, without such special assistance, the individual would not be able to work at that level. Thus, even if it is determined that Nazzaro had earnings in excess of $500 per month, a determination must be made as to whether the use of the job coach indicates that Nazzaro is, notwithstanding such objective earnings, not working at the SGA level as contemplated by the statute and applicable regulations.

It is settled that earnings which average more than $500 a month for calendar years after 1989 are "earnings that will *ordinarily* show that [a claimant has] engaged in substantial gainful activity" C.F.R. §§ 404.1574(b)(2)(vii) and 416.974(b)(2)(vii) (emphasis added). "The word 'ordinarily' implies that there can be exceptions and therefore the income levels of § 404.1574(b)(2) are intended to create only a rebuttable presumption of ability to engage in substantial gainful activity." *Koss v. Schweiker*, 582 F.Supp. 518, 521 (S.D.N.Y. 1984); *Case v. Sullivan*, 810 F.Supp. 52, 56 (W.D.N.Y.1992); *Goldstein v. Harris*, 517 F.Supp. 1314, 1317 (S.D.N.Y.1981). Work performed under special conditions such as with more assistance or supervision than is usually given other employees engaged in similar work may, regardless of the stated level of earnings, indicate that the employee is not working at the SGA level. 20 C.F.R.

§§ 404.1573(c) and 416.973(c). Thus, Nazzaro contends that the ALJ's decision should not be affirmed as it was based on legal error in that the ALJ failed to consider the special circumstances under which Nazzaro worked in determining that Nazzaro was engaged in SGA. *Dumas v. Schweiker, supra,* at 1550; 42 U.S.C. § 405(g) (1996); 42 U.S.C. § 1383(c)(3) (1996).

As noted, earnings are the primary criteria considered in determining whether a claimant is engaged in SGA. *Burkhalter v. Schweiker,* 711 F.2d 841 (8th Cir.1983). In *Burkhalter, supra,* the court determined that there are at least six factors to be considered in determining whether an individual was engaged in SGA including (1) earnings, (2) the nature of the work performed, (3) how well the claimant performs the work, (4) whether the work is done under special conditions, (5) whether the claimant is self-employed, and (6) the amount of time spent working. The court in *Burkhalter* specifically relied on the Supreme Court's decision in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), holding that those factors, codified as 20 C.F.R. §§ 404.1572–1574, are not arbitrary and capricious and must be considered in determining whether an individual is engaged in SGA. *Burkhalter, supra,* at 845.

In determining whether a claimant is engaged in SGA, the SSA must consider whether the claimant is unable, based on his impairment, "to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show you are not engaged in substantial gainful activity." 20 C.F.R. §§ 404.1573(b) and 416.973(b). Additionally, as the ALJ at an SSA hearing is an examiner who is charged with developing the facts, *Richardson, supra,* at 410, 91 S.Ct. at 1431–32 (holding that district court erred in failing to determine whether ALJ's determination was supported by substantial evidence), the ALJ was required to develop the facts provided by Nazzaro pertaining to the special conditions of his employment aris-

---

7. Whether the regulations should provide for such an interpretation raises a matter of policy for the SSA to consider.

ing from the job coach assistance he received.

Several courts have determined that applicants for disability benefits were not performing SGA despite their earnings. In *Boyes v. Secretary of Health and Human Services*, 46 F.3d 510 (6th Cir.1994), the court held that the claimant was not engaged in substantial gainful employment where the circumstances under which the claimant worked were tantamount to sheltered employment based on the amount of work regularly completed by him, the quality of his work, and the increased level of supervision he required to do his job. In *Chicager v. Califano*, 574 F.2d 161 (3rd Cir.1978), it was determined that a claimant was not engaged in SGA as a dispatcher where the claimant was frequently absent because of his impairment and encountered numerous difficulties in performing even simple tasks, including use of the telephone, and that substantial assistance was required from co-workers. In *Case v. Sullivan*, 810 F.Supp. 52 (W.D.N.Y. 1992), the court found that the presumption of SGA created by the plaintiff's $48,000 annual salary was rebutted by evidence of the plaintiff's poor performance of his job duties and that his employer indicated that the plaintiff was overpaid, and in *Goldstein v. Harris*, 517 F.Supp. 1314 (S.D.N.Y.1981), the court remanded a case to the SSA case for reconsideration and directed that the ALJ, in determining whether a claimant had engaged in SGA, to consider the nature and quality of the claimant's work, whether such work was performed under special employment conditions, and the amount of time claimant worked.

Based on this caselaw, the applicable regulations, and the relevant information contained in the record, the court finds that the ALJ erred and this matter should be remanded to the ALJ for a determination as to whether the special conditions under which Nazzaro worked, specifically the provision of the WNYALD job coach, indicate that Nazzaro was not engaged in SGA, despite his reported earnings. Additionally, although Nazzaro's employer indicated on the SSA's employer's Work Activity Questionnaire that Nazzaro's work was worth what TOPS paid him, that questionnaire was designed to elicit information necessary to calculate the amount of a subsidy *provided by an employer*. The questionnaire does not address the issue of whether an employee who receives assistance form a third party would be able to satisfactorily perform that job without the extra assistance. As discussed, the court is in agreement with the ALJ that Nazzaro's earnings were not subsidized. That finding alone, however, does not conclude the ALJ's determination under 20 C.F.R. §§ 404.1571–1574 and 416.971–974 and applicable caselaw where, as here, there is at least some evidence of special conditions under which the claimant works which may establish that the claimant is not engaged in SGA, despite his actual earnings.

Here, Nazzaro has always received assistance from the WNYALD job coach since he first began working in 1986 and there are several indications in the record provided by the WNYALD that without such assistance, Nazzaro would be unemployable. (R. 112, 138, 139). The ALJ did not, however, address whether despite Nazzaro's earnings, the fact that he was provided extra assistance by the WNYALD job coach indicated that he was not engaged in substantial gainful activity, although there is evidence provided by the WNYALD Vocational Services personnel that Nazzaro required such assistance to maintain any employment. (R. 94, 138–140). Thus, in accordance with *Richardson*, the ALJ failed to examine the facts presented, and determine, as required, whether the assistance and supervision provided by Nazzaro's job coach establishes that Nazzaro was not engaged in SGA.

Furthermore, a finding that Nazzaro was not engaged in SGA at TOPS based on the special conditions of his employment does not require the ALJ to conclude that Nazzaro is unable to engage in SGA. There may, notwithstanding his present employment, be some other employment of which Nazzaro is capable without such assistance. 20 C.F.R. §§ 404.1573(c) and 416.973(c). Such a determination cannot be made based on the present record and the court therefore recommends that this case be remanded to the

ALJ for reconsideration, based on a more fully developed record.

## 2. *Severe Physical or Mental Impairment*

■ The next step of the analysis is to determine whether Nazzaro had a severe physical or mental impairment significantly limiting his ability to do "basic work activities."

"Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Basic work activities" include:

... walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)–(6).

Further, a physical or mental impairment is severe if it "significantly limit(s)" the applicant's physical and mental ability to do such basic work activities. 20 C.F.R. § 404.1521(a).

Here the ALJ determined that Nazzaro had been engaged in substantial gainful activity, and thus according to *Bapp, supra,* the ALJ's inquiry should have concluded at that point. Nevertheless, the ALJ continued and found that Nazzaro did not have a severe physical or mental impairment that prevented him from participating in substantial gainful employment, although the ALJ did not elaborate on the basis of that finding. (R. 18–19); Defendant's Memorandum of Law, at p. 9.

Nazzaro's attorney did remark at the hearing that the only issue properly before the ALJ was whether Nazzaro was engaged in SGA as, according to 20 C.F.R. §§ 404.946(a) and 416.1446(a), the scope of the ALJ's decision should have been limited to the initial application and reconsideration, absent notice to the parties that other issues were to be

considered at the administrative hearing. In this case, the record clearly states that Nazzaro's initial application for disability benefits was denied, based on the Work Activity Report which indicated Nazzaro's total monthly earnings were in excess of the SGA limit, and based on his current employer's statement that Nazzaro's work was fully worth the amount he was paid. (R. 50–51). Nazzaro's application for reconsideration was denied on the same basis, although at that time, the SSA made a determination that Nazzaro's gross wages were subsidized in part. (R. 54).

As it is clear that both the initial and reconsideration of Nazzaro's application for disability benefits was restricted solely to the issue of whether Nazzaro was engaged in SGA, it was error for the ALJ to consider Nazzaro's residual functional capacity absent notice to the parties of his intention to do so. 20 C.F.R. §§ 404.946(a) and 416.1446(a). If the ALJ determines on remand that Nazzaro is not capable of SGA, then the ALJ must complete the required sequential analysis, based on a fully developed record which includes Nazzaro's medical, psychological and vocational records.[8] *See* Discussion, *supra,* at pp. 458–459.

Upon remand the ALJ will therefore determine whether under 20 C.F.R. §§ 404.1573 and 416.973 Nazzaro "earned" the actual wages attributed to him by TOPS for the work he performed when considered with the extent of the assistance provided by the job coach. Based upon the present record, as discussed, it is reasonably clear that from TOPS's viewpoint Nazzaro's wages were fully earned regardless of the needed assistance provided by the WNYALD job coach. That fact does not necessarily preclude, however, a finding by the SSA that the extent of the job coach assistance required by Nazzaro to perform such work renders his work and earnings to have occurred under a special condition sufficient to determine that such work does not constitute substantial gainful activity. By recommending remand

---

8. Defendant has conceded that if the court remands this matter based on an inappropriate determination that Nazzaro was engaged in SGA, that the sequential analysis must also be completed. Defendant's Memorandum of Law, at p. 9, n. 3; Defendant's Reply Memorandum of Law at p. 3, n. 1.

**464**

on this issue, the court does not intimate any view on whether, following further development of the record and reconsideration by the ALJ of this question, Nazzaro should not be determined to be engaged in substantial gainful activity.

### *CONCLUSION*

Based on the foregoing, Defendant's motion for judgment on the pleadings Defendant's (Doc. # 6) should be DENIED; Plaintiff's cross motion for judgment on the pleadings (Doc. # 9) should be DENIED in part and GRANTED in part and REMANDED for reconsideration.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

SO ORDERED.